UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAY CHRIS OLSON,<br><br>            Plaintiff,<br><br>    v.<br><br>IDAHO DEPARTMENT OF CORRECTION and CORIZON MEDICAL SERVICES,[1]<br><br>            Defendants. | Case No. 1:20-cv-00396-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Jay Chris Olson's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

---

[1] Plaintiff has identified the Defendants as (1) the Idaho Department of Correction ("IDOC") and (2) "Medical Corizon Security Staff." *Compl.*, Dkt. 1 at 1. It seems that Plaintiff intended this second Defendant to be Corizon Medical Services, the private company providing medical treatment to Idaho inmates under contract with the IDOC.
    It appears from the body of the Complaint that Plaintiff intended to name additional Defendants—including Rebekah Haggard and Rona Siegert. *See id.* at 3–4. Plaintiff is advised that he must clearly identify all Defendants in the caption of his Complaint. Any individual or entity not so identified is not considered a party to this action.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

1.  **Screening Requirement**

The Court must review complaints filed by prisoners seeking relief against a governmental entity, or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a prisoner complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

2.  **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

3.     **Factual Allegations**

Plaintiff is a prisoner currently incarcerated at the Idaho State Correctional Institution ("ISCI"). Plaintiff alleges that, on January 27, 2020, he was transported from a Pocatello medical center to the ISCI medical infirmary. *Compl.*, Dkt. 1, at 5–6. Plaintiff was kept in the infirmary overnight, even though the "specialist in Pocatello advised" that he be kept there longer. Plaintiff has "terminal liver issues," and over the next two months, he had "several episodes of seizures and amenia on the brain attacks," requiring him to be taken back to the infirmary several times, as well as to an outside emergency department. *Id*. at 6. Plaintiff does not describe the medical treatment he received on these occasions.

On March 11, 2020, a non-defendant female nurse—whom Plaintiff identifies as either Gen Brewer or Tonya McMillian—and an unknown male nurse gave Plaintiff lactulose. Plaintiff states that the nurses "forced" him to take the lactulose "or threatened with anal obtrusion." *Id*. By this allegation, Plaintiff may be alleging that providers gave him a choice between taking the lactulose orally or anally. Plaintiff states that the lactulose caused severe diarrhea.

Plaintiff alleges that he was not aware of his surroundings "or even [his] name." *Id*. But, Plaintiff remembers trying to refuse the last dose of lactulose, and he was "forced" to take it.

At some point thereafter, non-defendant correctional officer Sergeant Gould arrived to bring Plaintiff back to his cell. Plaintiff states he was frequently using the restroom as a result of the lactulose. He asked Gould for a wheelchair because, without

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

one, he believed he would "mess" himself. *Id*. The male nurse and the officer then "smirked." Gould asked the nurse if Plaintiff had a wheelchair memo, and the nurse said he did not think that Plaintiff did. Plaintiff "blurted out … I do fucking too." *Id*. at 7. Plaintiff apparently did have a wheelchair memo, but the nurse did not realize this because he did not check the computer.

Plaintiff and Gould then had an altercation, which resulted in Plaintiff being transported to a cell in Unit 8, or "the hole." A team of officers later extracted Plaintiff from the cell, causing Plaintiff to suffer various injuries. *Id*. at 7–9.

A non-defendant nurse evaluated Plaintiff's injuries. She told Plaintiff he needed sutures and asked him if he would accept medical help. He responded that he "didn't dare open [his] mouth or [he] would get in trouble." *Id*. at 9. The unidentified leader of the extraction team said, "[W]e will take that as a medical refusal" and placed Plaintiff in an empty cell.

Plaintiff was left naked, in view of many inmates. He was terrified and humiliated. *Id*. at 9–10. Plaintiff later learned that he had been placed on suicide watch. The next day Plaintiff was taken back to Unit 8.

Evidently as a result of the altercation with Gould or Plaintiff's refusal to obey officers' instructions to move cells, Plaintiff lost all privileges for 68 days. He also received additional classification points and was denied parole at some point. *Id*. at 10. Plaintiff also alleges that he kept "getting denied medical testing and treatment," but does not explain his medical appointments any further. *Id*. at 10.

Plaintiff contends that he receives only "minimal medical assistance and with his excruciating liver pain fears for his life." *Id*. at 11. Plaintiff requests health services but is dissatisfied by the responses to those requests. Plaintiff believes that prison medical providers are just giving him their "personal opinions" instead of referring him to an outside provider, which is Plaintiff's preference. *Id*. Plaintiff also believes he has not been referred to an outside specialist "because of his past behavioral issues," and not because medical providers have judged it unnecessary for treatment. *Id*. Plaintiff also suffers elbow pain, which prison medical providers state is from an old injury that has deteriorated naturally as a result of age. *Id*. at 12. Plaintiff disputes this diagnosis.

Plaintiff sues the IDOC and Corizon, asserting that he has been denied reasonably adequate medical care in violation of the Eighth Amendment.[2] *Id*. at 11. Plaintiff seeks monetary, declaratory, and injunctive relief. *Id*. at 13–14.

**4.     Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.     *Standards of Law Governing Plaintiff's Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person

---

[2] The Complaint also includes claims of excessive force. *Compl*. at 11. However, the Court previously severed those claims into a new action: *Olson v. Idaho Dep't of Corr.*, Case No. 1:21-cv-00066-BLW. *See* Dkt. 7. Plaintiff's excessive force claims will be addressed only in that separate case.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person."[3] *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a

---

[3] For this reason, Plaintiff's § 1983 claims based on Defendants' alleged "neglect and negligence in this case" are implausible. *See Compl.* at 2.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

To bring a § 1983 claim against a private entity performing a government function, such as Corizon, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical and mental health treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

*McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Thus, if a medical treatment is denied because of a blanket governmental policy—rather than an individualized determination of the appropriate treatment for the particular inmate—a factfinder may infer deliberate indifference. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039–40 (9th Cir. 2015) ("Rosati plausibly alleges that prison officials were aware of her medical history and need for treatment, but denied the surgery because of a blanket policy against [sex reassignment surgery]."); *Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001) (unpublished) ("[T]here are at least triable issues as to whether hormone therapy was denied ... on the basis of an individualized medical evaluation or as a result of a blanket rule, the application of which constituted deliberate indifference to [plaintiff's] medical needs.").

However, if providers make an individualized assessment and choose a treatment that, in their informed judgment, is medically appropriate, a plaintiff generally cannot

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

establish deliberate indifference. *See Lamb*, 895 F.3d at 760 ("[The plaintiff] is obtaining psychological counseling and hormone treatments, including estrogen and testosterone-blocking medication. Though prison officials have not authorized surgery or the hormone dosages that [the plaintiff] wants, the existing treatment precludes a reasonable fact-finder from inferring deliberate indifference."); *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986) ("While the medical community may disagree among themselves as to the best form of treatment for plaintiff's condition, the Department of Corrections made an informed judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs."). In such a case, a plaintiff may avoid summary judgment on an Eighth Amendment claim only if the defendants intentionally interfered with appropriate medical diagnosis and treatment—for example, by "creat[ing] a pretextual report to support denial" of a requested treatment. *Norsworthy*, 87 F. Supp. 3d at 1117.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

>    B.   *The Complaint Does Not State a Plausible Claim of Inadequate Medical Treatment*

As an initial matter, Plaintiff's claims against the IDOC—a state entity—are implausible. The Eleventh Amendment prohibits a federal court from entertaining a suit

brought by a citizen against a state or state entity absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver, nor has Idaho itself waived its sovereign immunity for constitutional claims. *Quern v. Jordan*, 440 U.S. 332, 342–44 (1979); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (unpublished). Finally, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff should omit the IDOC from any amended complaint.

As for Plaintiff's claims against Corizon, the allegations in the Complaint do not support a reasonable inference that Corizon has a policy or custom of denying adequate medical care to inmates, as required by *Monell*. The Complaint plausibly alleges only that Plaintiff's individual medical providers made decisions about Plaintiff's medical treatment using their independent judgment. This is insufficient to state a plausible Eighth Amendment policy claim against Corizon.[4]

---

[4] In addition, Plaintiff should be aware that his claims of humiliation and verbal abuse are not actionable under § 1983. *See Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which 'shocks the conscience'" (citation omitted)).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

**5.      Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. § 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "First Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant

knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[5]

2. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: February 12, 2021

B. Lynn Winmill
U.S. District Court Judge

---

[5] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).